**IMT, INC. v. CITY OF LUMBERTON**

[219 N.C. App. 36 (2012)]

IMT, INC., DBA THE INTERNET BUSINESS CENTER, Plaintiff v. CITY OF
LUMBERTON, Defendant CITY OF LUMBERTON, Plaintiff v. G&M COMPANY,
LLC, DBA INTERNET CAFÉ SWEEPSTAKES AND WINNERS CHOICE,
Defendant CITY OF LUMBERTON, Plaintiff v. DANIEL PAUL STORIE d/b/a
SWEEP-NET INTERNET BUSINESS CENTER, Defendant EZ ACCESS OF N.C.,
LLC, Plaintiff v. CITY OF LUMBERTON, Defendant

No. COA11-813

(Filed 21 February 2012)

**1. Gambling—privilege license tax—games of chance—
sweepstakes**

The trial court did not err by granting summary judgment in
favor of the City and denying the same for appellants even though
appellants contended they did not operate "games of chance" as
required under the pertinent local municipal ordinance instituting
a privilege license tax applicable to for-profit businesses where
persons utilized electronic machines to conduct games of chance.
The ordinance imposed a privilege tax on electronic machines
that conducted "games of chance" including sweepstakes.

**2. Gambling—games—no payment requirement**

The trial court did not err by granting summary judgment in
favor of the City and denying the same for appellants even though
appellants contended their games did not require payment as the
local municipal ordinance required. The ordinance applied to
appellants because they accepted payment in exchange for cus-
tomers' use of computers that conducted games of chance.

**3. Taxation—privilege license tax—cyber-gambling**

The trial court did not err by granting summary judgment in
favor of the City and denying the same for appellants even though
appellants contended the local municipal ordinance instituting a
privilege license tax was unconstitutional. The City properly
taxed businesses for the privilege of carrying out cyber-gambling
through the use of computer terminals as authorized by N.C.G.S.
§ 160A-211.

**4. Taxation—rule of uniformity—cyber-gambling establishments**

The trial court did not err by granting summary judgment in
favor of the City and denying the same for appellants even though
appellants contended the local municipal ordinance violated the

rule of uniformity by taxing similarly situated taxpayers differently. The tax was applied to every single cyber-gambling establishment that utilized computer or gaming terminations to carry on its business. Further, the state endorsed lotteries reasonably constituted a separate classification from appellants' unendorsed legal businesses, and the City's privilege license tax did not need to be imposed upon them.

## 5. Constitutional Law—discriminatory tax—rational basis

The trial court did not err by granting summary judgment in favor of the City and denying the same for appellants even though appellants contended there was no rational basis for a discriminatory tax. The other businesses being taxed lesser amounts for privilege license purposes were different classes of business.

## 6. Taxation—privilege license tax—constitutionality

The trial court did not err by granting summary judgment in favor of the City and denying the same for appellants even though appellants contended the local municipal ordinance was unconstitutional because it imposed an unjust and inequitable taxation scheme. Appellants provided no evidence that the City's privilege license tax would completely deprive appellants of all profit associated with their businesses. Further, factual elements were missing to prove the City's privilege license tax was prohibitive.

## 7. Gambling—cyber-gambling—Internet Tax Freedom Act

The trial court did not err by granting summary judgment in favor of the City and denying the same for appellants even though appellants contended the local municipal ordinance was preempted by the Internet Tax Freedom Act since it applied to businesses engaged in promotional activity using the internet. The ordinance never mentioned internet-based sweepstakes or made a distinction regarding electronic commerce, but instead imposed the tax for cyber-gambling establishments that used a computer or gaming terminal in provision of games of chance.

Judge HUNTER, Robert C., dissenting.

Appeal by Plaintiff IMT, Inc. d/b/a The Internet Center ("IMT") from judgment entered 6 June 2011. Appeal by Defendant G&M Company, Inc. d/b/a Internet Café Sweepstakes and Winner's Choice ("G&M") from judgment entered 10 May 2011. Appeal by Defendant Daniel Paul Storie d/b/a Sweep-Net Internet Business Center

("Storie") from judgment entered 10 May 2011. Appeal by Plaintiff E.Z. Access of N.C., LLC ("E.Z.") from judgment entered 6 June 2011. All judgments were entered by Judge Robert Frank Floyd, Jr. in Robeson County Superior Court. Heard in the Court of Appeals 16 November 2011.

*The Law Offices of Lonnie M. Player, Jr., PLLC, by Lonnie M. Player, Jr., for Appellants.*

*James C. Bryan for Appellee.*

HUNTER, JR., Robert N., Judge.

This appeal is the result of four separate cases that were appealed and have been consolidated pursuant to Rule 11(d) of the Rules of Appellate Procedure. Appellants[1] argue (1) the trial court erred by granting summary judgment in favor of the City of Lumberton (the "City') ("Appellee") and denying Appellants' summary judgment motion and (2) the ordinance at issue is unenforceable against Appellants for various reasons. We disagree and affirm the judgment of the trial court.

## I. Factual & Procedural Background

Appellants operate businesses within the municipal limits of the City where they sell blocks of internet usage time at competitive rates to customers. When a customer purchases time, the customer receives a free sweepstakes entry. The sweepstakes entry has a predetermined prize, which can be revealed by using computers on Appellants' business premises. However, the customer is not required to redeem or reveal the predetermined cash value of the free sweepstakes entry. Customers can also receive a sweepstakes entry without purchasing anything by mailing a request to an address displayed in Appellants' businesses. Customers opting for the "no purchase necessary" mail-off entry get the same free, predetermined opportunity to win as offered to Appellants' customers who purchase internet usage time.

The City is entitled to create and annually collect privilege license taxes pursuant to N.C. Gen. Stat. § 160A-211 and N.C. Gen. Stat. § 105-109(e), respectively. For the fiscal year of 2009 to 2010, the City imposed a municipal privilege tax upon Appellants of $12.50. On 1 July 2010, the City enacted an ordinance instituting a privilege

---

1. "Appellants" include: IMT, G&M, Storie, and E.Z.

IMT, INC. v. CITY OF LUMBERTON

[219 N.C. App. 36 (2012)]

license tax applying to, in pertinent part, "[a]ny for-profit business or enterprise, whether as a principal or accessory use, where persons utilize electronic machines . . . to conduct games of chance, including . . . sweepstakes" (the "Ordinance"). The Ordinance taxes such enterprises in the amount of $5,000 per business location and $2,500 per gaming or computer terminal within the business. Under the Ordinance, the City is entitled to collect the tax in a civil proceeding, free of any claim for homestead or personal property exemption. The City is also entitled to collect a five percent penalty per month (up to a maximum of 25 percent) for failure to pay privilege license taxes, free of any claim for homestead or personal property exemption.

Each Appellant opened its business before the effective date of the Ordinance. Since opening, IMT has had 55 computer terminals at one location; G&M has had 28 computer terminals at one location; Storie has had 40 computer terminals at one location; and E.Z. has had at least one computer terminal at one location. The City mailed each Appellant notice regarding the new privilege tax.

Appellant IMT's privilege license taxes for 2010 to 2011 amounted to $137,525. IMT's failure to pay the entire tax on time resulted in late payment penalties. After 1 December 2010, IMT made a $133,581.61 payment under protest, leaving a balance due of $6,323.75. On 17 November 2010, IMT filed a complaint against the City regarding the privilege license tax. The City filed its counterclaim on 17 December 2010. Both parties filed motions for summary judgment and consented to consideration of those motions out of district, session, and term. Judge Floyd, Jr., by clerical error, granted summary judgment in favor of IMT, denying the City's summary judgment motion. Upon a consent motion to correct the judgment, Judge Floyd, Jr. issued a corrective judgment entered 6 June 2011, granting summary judgment for the City and denying the same for IMT. IMT entered timely notice of appeal on 14 June 2011.

Appellant G&M also failed to pay part or all of the privilege license tax to the City and had a balance of $90,000 on 1 November 2010, including principal in the amount of $75,000 and penalties in the amount of $15,000. On 17 November 2010, the City filed a complaint against G&M for failure to pay the privilege license tax. G&M filed its counterclaims on 3 January 2011. Both parties filed for summary judgment on 14 January 2011 and consented to consideration of those motions out of district, session, and term. Judge Floyd, Jr. entered judgment 10 May 2011 granting summary judgment for the City and

denying the same for G&M. G&M entered timely notice of appeal on 1 June 2011.

Appellant Storie also failed to pay part or all of the privilege license tax to the City and had a balance of $126,000 on 1 November 2010, including principal in the amount of $105,000 and $21,000 in penalties. On 17 November 2010, the City filed a complaint against Storie for failure to pay the privilege license tax. Storie filed his counterclaims on 21 January 2011. Both parties filed for summary judgment and consented to consideration of those motions out of district, session, and term. Judge Floyd, Jr. entered judgment 10 May 2011 granting summary judgment for the City and denying the same for Storie. Storie entered timely notice of appeal on 1 June 2011.

Appellant E.Z. paid the amount owed on the privilege tax of $110,000 under protest. On 4 January 2011, E.Z. filed a complaint against the City regarding the privilege license tax. Both parties filed motions for summary judgment on 14 January 2011 and consented to consideration of those motions out of district, session, and term. Judge Floyd, Jr., by clerical error, granted summary judgment in favor of E.Z., denying the City's summary judgment motion. Upon a consent motion to correct the judgment, Judge Floyd, Jr. issued a corrective judgment entered 6 June 2011, granting summary judgment for the City and denying the same for E.Z. E.Z. entered timely notice of appeal on 14 June 2011.

## II. Jurisdiction & Standard of Review

Appellants appeal from the final judgments of a superior court and appeal therefore lies with this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2011).

This Court's standard of review of a trial court's summary judgment order is *de novo. Sturgill v. Ashe Mem'l Hosp., Inc.,* 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007). The reviewing court must determine whether there is a genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Oliver v. Roberts,* 49 N.C. App. 311, 314, 271 S.E.2d 399, 401 (1980). Where, as here, the parties have cross motions for summary judgment, and there is no dispute as to any material fact, the sole issue on appeal is whether the trial court properly concluded that one party was entitled to judgment as a matter of law or if judgment should have been entered in favor of the opposing party. *See McDowell v. Randolph Cty.,* 186 N.C. App. 17, 20, 649 S.E.2d 920, 923 (2007).

## III.  Analysis

Appellants contend the trial court erred in granting summary judgment for the City and denying the same for Appellants because the Ordinance in question is unenforceable under several distinct legal theories. We disagree that the statute is unenforceable under Appellants' contentions and affirm the judgments of the trial court.

[1] Appellants first argue the Ordinance does not apply to them because they do not operate "games of chance" as required under the Ordinance. We disagree. Where a statute is clear and unambiguous, the plain meaning of the words will be applied without judicial construction. *Wiggs v. Edgecombe Cty.*, 361 N.C. 318, 322, 643 S.E.2d 904, 907 (2007). Here, the Ordinance clearly imposes the privilege license tax on electronic machines that conduct "games of chance," including "sweepstakes." Appellants admit they conduct sweepstakes but argue that their games are not "games of chance" because their prizes are predetermined. However, the Ordinance clearly states that the tax applies regardless of whether "the value of such distribution is determined by electronic games played or by predetermined odds." Appellants nevertheless claim that *American Treasures, Inc. v. State*, 173 N.C. App. 170, 178, 617 S.E.2d 346, 351 (2005), holds that where something of inherent value is sold, a sweepstakes entry revealing a predetermined outcome is an ancillary benefit to the sale and is not a "game of chance." We disagree with Appellants' interpretation of *American Treasures*. However, we do not expound upon this point as we find *American Treasures* to be inapplicable to the case *sub judice* because it concerns construing "games of chance" in a criminal statute found in Chapter 14, Article 37 of the North Carolina General Statutes. Unlike *American Treasures*, this case deals with a local municipal ordinance that on its face defines "games of chance" to include sweepstakes, whether or not the resulting prize is predetermined. Therefore, under the clear and unambiguous language of the Ordinance, we hold the Ordinance applies to Appellants because they conduct games of chance.

[2] Appellants also argue the Ordinance does not apply to Appellants because their games do not "require payment" as the Ordinance requires. Appellants correctly assert that payment is a component of the definition of a cyber-gambling establishment under the Ordinance. However, Appellants incorrectly assert that the offering of a free entry to the sweepstakes somehow negates the applicability of the tax. The plain and unambiguous language of the Ordinance states it applies to cyber-gambling

businesses or enterprises [that] have as a *part* of [their] operation the running of one or more games or processes with any of the following characteristics: (1) payment, directly or as an intended addition to the purchase of a product, whereby the customer receives one or more electronic sweepstakes tickets, cards, tokens or similar items entitling or empowering the customer to enter a sweepstakes, and without which item the customer would be unable to enter the sweepstakes; or (2) payment, directly or as an intended addition to the purchase of a product, whereby the customer can request a no purchase necessary free entry of one or more sweepstakes tickets or other item entitling the customer to enter a sweepstakes. (Emphasis added.)

Nowhere does the Ordinance require payment for *every* sweepstakes entry; the plain and unambiguous language of the Ordinance simply requires that such an establishment "have as a part of its operation" games requiring payment. Therefore, we hold the Ordinance applies to Appellants because they accept payment in exchange for customers' use of computers that conduct games of chance.

**[3]** Appellants next make a series of arguments regarding the constitutionality of the Ordinance. Appellants first argue the Ordinance is unconstitutional because it unlawfully classifies property for taxation, a power specifically reserved for the General Assembly. Appellants argue the privilege license tax is problematic because it taxes each "computer terminal" within each cyber-gambling business $2,500 per terminal, thus creating classifications of personal property and taxing them differently. We disagree.

Under N.C. Gen. Stat. § 160A-211, the City has the authority to levy privilege license fees, imposed for the privilege of carrying on a certain business. N.C. Gen. Stat. § 160A-211 (2011). Property is often used to carry on a certain business, and when the privilege of carrying on that business is taxed, the tax may also be levied on the property used to carry on that particular trade, profession, or business. *See, e.g., State v. Hughes,* 193 N.C. 847, 847, 137 S.E. 819, 820 (1927) (upholding a tax on gasoline dealers for the privilege of dealing gasoline, which taxed such dealers for each tank wagon operated on the streets); *Southeastern Express Co. v. City of Charlotte,* 186 N.C. 668, 674, 120 S.E. 475, 478 (1923) (upholding Charlotte's tax for the privilege of having a delivery service company, which taxed such companies $75 per business and $25 per motor vehicle used to carry on the business). Such a tax on the property is not considered a separate

property tax but is incidental to the tax on the privilege of conducting a certain business. *See F. S. Royster Guano Co. v. Town of Tarboro*, 126 N.C. 68, 71, 35 S.E. 231, 232 (1900) (holding that "[t]he privilege tax levied by the town was not a tax on the goods, but a tax on the privilege of manufacturing guano within the corporate limits of the town"). Basing a privilege license tax on the units of property a business has is common and will not invalidate a privilege license fee ordinance. *See Lenoir Drug Co. v. Town of Lenoir*, 160 N.C. 571, 573, 76 S.E. 480, 481 (1912) (upholding the municipality's privilege license fee for each soda fountain operated by a business). Here, the City is not taxing individual computer terminals for the sake of taxing computers. The City is taxing businesses for the privilege of carrying out cyber-gambling through the *use* of computer terminals, and we hold such a tax is authorized by N.C. Gen. Stat. § 160A-211.

[4] Appellants next argue the Ordinance violates the rule of uniformity by taxing similarly situated taxpayers differently. Appellants argue that the City is taxing only a specific type of computer terminal that conducts "games of chance" while excluding all other computer terminals located in other businesses from taxation, and this violates the rule of uniformity. We disagree.

Article V, Section 2 of the North Carolina Constitution provides "[n]o class of property shall be taxed except by uniform rule, and every classification shall be made by general law uniformly applicable in every county, city and town, and other unit of local government." N.C. Const. Art. V, § 2(2). " '[A] tax is 'uniform' when it operates with equal force and effect in every place where the subject of it is found . . . and with reference to classification it is 'uniform' when it operates without distinction or discrimination upon all persons composing the described class.' " *Hajoca Corp. v. Clayton*, 277 N.C. 560, 569, 178 S.E.2d 481, 487 (1971) (citation omitted) (alteration in original). This uniformity standard applies to license taxes. *Id.* at 567, 178 S.E.2d at 486. Here, the City is taxing the business activity of cyber-gambling that uses computer or gaming terminals to carry on the business. Any tax on the computer terminals is incidental to the main purpose of the privilege license fee: to tax the privilege of conducting the particular business of cyber-gambling. With this understanding, we hold the tax to be uniform, as it applies to every single cyber-gambling establishment that utilizes computer or gaming terminals to carry on its business.

Appellants further argue the Ordinance does not apply uniformly because it unlawfully exempts certain property from taxation.[2] Appellants argue the Ordinance unlawfully exempts from taxation lotteries endorsed by this state that also conduct "games of chance." However, there is no requirement that the City levy a privilege license tax on all particular trades; it may levy the tax based on classifications within a particular class of the trade. *See State v. Rippy*, 80 N.C. App. 232, 234, 341 S.E.2d 98, 99 (1986) (citation omitted). " 'As long as a classification is not arbitrary or capricious, but rather [is] founded upon a rational basis, the distinction will be upheld by the Court.' " *Id.* (citation omitted) (alteration in original). The North Carolina lotteries are distinct businesses that would not be legal without the state's endorsement. *See* N.C. Gen. Stat. § 14-290 (2011) (prohibiting lotteries except for the state endorsed lottery under Chapter 18C of the General Statutes). The only lotteries endorsed by the state are those whose net revenues are transferred to the state's Education Lottery Fund. N.C. Gen. Stat. § 18C-164 (2011). Appellants' games of chance do not provide net revenues to this fund. Therefore, the state endorsed lotteries reasonably constitute a separate classification from Appellants' unendorsed legal businesses, and the City's privilege license tax need not be imposed upon them. Appellants also argue the Ordinance violates the rule of uniformity by taxing Appellants' electronic gaming operations but "exclud[ing] from taxation the electronic machines used in the operation of promotional sweepstakes promulgated by third parties such as Food Lion, McDonald's, Subway and others." However, Appellants provide no support or evidence for this contention, and thus, we need not address it.

[5] Appellants next contend that assuming *arguendo* the City had the authority to enact a taxing scheme that classifies, exempts and imposes disparate tax treatment upon businesses like Appellants' businesses, there is no rational basis for such a discriminatory tax, and, as such, it is unconstitutional. " 'License taxes must bear equally and uniformly upon all persons engaged in the same class of business or occupation or exercising the same privileges.' " *C.D. Kenny Co. v. Town of Brevard*, 217 N.C. 269, 272, 7 S.E.2d 542, 543 (1940) (citation omitted). Where there is no rational basis for the distinction between merchants, the tax is not uniform and violates this State's Constitution. *Id.* at 272, 7 S.E.2d at 544. Appellants refer to the list of other businesses subjected to a privilege license tax by the City and

---

2. We again note the City's tax is a privilege license tax and not a property tax. Since there is no taxation of property, there can be no improper exemption. However, in that the Ordinance incidentally taxes property, we address this argument.

note that they are assessed fees of $500 or less, while cyber-gambling establishments are charged $5,000 per location and an additional $2,500 per gaming terminal within the location. Appellants argue that the Ordinance disparately imposes a tax on cyber-gambling establishments in an amount "far and above the amount assessed against any other municipal taxpayer." However, this argument misses the mark completely. As discussed *supra*, we hold the City's privilege license tax on cyber-gambling establishments uniformly applies to all persons engaged in the cyber-gambling business. The 43 other businesses being taxed lesser amounts for privilege license purposes are different classes of business and include, *inter alia*, businesses selling knives, movie theaters, pawnbrokers, beer and wine wholesalers, automobile dealerships, bowling alleys and even a circus. To compare the privilege license tax amount Appellants are subjected to with the amounts incredibly distinct businesses are subjected to and to claim disparate tax treatment requiring a rational basis is an invalid and misleading argument that we reject.

**[6]** Appellants next argue the Ordinance is unconstitutional because it imposes an unjust and inequitable taxation scheme. "[T]he power to tax involves the power to destroy." *M'Culloch v. State*, 17 U.S. 316, 431, 4 L. Ed. 579, 607 (1819). Article V, Section 2(1) of our Constitution provides, "The power of taxation shall be exercised in a just and equitable manner." N.C. Const. Art. V, § 2(1). To be just and equitable, a privilege license tax must not be so high as to amount to a prohibition of the particular business. *State v. Razook*, 179 N.C. 708, 710, 103 S.E. 67, 68 (1920). The privilege license tax should reasonably relate to the profits of the business. *Nesbitt v. Gill*, 227 N.C. 174, 180, 41 S.E.2d 646, 650 (1947). The fee may be higher for more profitable businesses. *Clark v. Maxwell*, 197 N.C. 604, 607, 150 S.E. 190, 192 (1929). Here, Appellants claim the Ordinance "imposes a tax that is between 6000 and 11000 times higher than the previous year's tax and far exceeds the amount levied against any other municipal taxpayer." Appellants further argue, "It is not hard to project that the tax scheme will completely deprive Appellants of all profit associated with their lawful business." Besides these widespread assertions, however, Appellants provide no evidence that the City's privilege license tax would completely deprive Appellants of all profit associated with their businesses. *See Razook*, 179 N.C. at 711, 103 S.E. at 68 (where our Supreme Court could not hold that a $400 tax on a business in 1920 was prohibitive "in the absence of evidence to that effect"). There does not appear to be a sufficient record of proof to show governmental action was taken to deprive Appellants of a constitutional right.

Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern, or even that a particular purpose was the "dominant" or "primary" one. In fact, it is because legislators and administrators are properly concerned with balancing numerous competing considerations that courts refrain from reviewing the merits of their decisions, absent a showing of arbitrariness or irrationality.

*Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265, 50 L. Ed. 2d 450, 464-65 (1977).

"If, however, it be conceded that the courts have power to declare a municipal ordinance levying a license tax on business invalid on the ground that the tax imposed is so oppressive and unreasonable as to amount to confiscation, rather than taxation, they will not determine the question by mere inspection of the amount of the tax imposed. All presumptions and intendments are in favor of the validity of the tax; * * * in other words, the mere amount of the tax does not prove its invalidity."

*Razook,* 179 N.C. at 711, 103 S.E. at 69 (citation omitted); *see State v. Danenberg,* 151 N.C. 718, 722, 66 S.E. 301, 303 (1909) (holding that "in the absence of positive evidence to the contrary, [privilege license taxes] are presumed to be reasonable"). In *Dannenberg,* our Supreme Court noted that in determining whether an ordinance imposing a privilege license tax is reasonable, evidence regarding the effect on the business of complying with the ordinance is typically unhelpful because negligence, incompetence, or other considerations could play into the success of the licensee's business. *Id.* Instead, in fixing a proper license tax, the Court suggested presenting evidence on revenue, regulation, and cost thereof. *Id.* Additionally,

[t]he territory and population to be supplied is an important consideration in estimating the value of the right conferred. It is worth a great deal more to be permitted to conduct a business of this kind in a large city than in a small town, and a license tax that would be within the bounds of reason when imposed in [a big city] might be unreasonable and prohibitive if imposed in a small place. Other considerations that may properly enter into the matter are the cost of police surveillance and the propriety of reducing the number of [businesses] in order that such surveillance and supervision may be more effective and less costly.

*Id.*

Here, the record is devoid of evidence of the profits, net revenues, regulation, and cost thereof for Appellants' businesses before and after the privilege license tax was instituted. Nor was any evidence presented regarding the territory and target population of Appellants' businesses. The only evidence Appellants presented is the new amount of the privilege license tax on Appellants' businesses in comparison to the privilege license tax on Appellants' businesses in previous years as well as in comparison to the privilege license tax on other businesses. As stated in *Razook*, such evidence does not prove the tax's invalidity. *See Razook*, 179 N.C. at 711, 103 S.E. at 69. Because Appellants presented no additional evidence that the privilege license tax was prohibitive on their particular businesses, Appellants' argument is dismissed. We emphasize that this opinion does not stand for the proposition that a taxing mechanism similarly punitive to the one at bar would pass constitutional muster if evidence of the prohibitive intent of the tax was shown. We find the City's privilege license tax here constitutional only because factual elements are missing to prove the City's privilege license tax is prohibitive.

**[7]** Appellants finally contend the Ordinance is unconstitutional because, as it applies to businesses engaged in promotional activity using the internet, it is preempted by the Internet Tax Freedom Act. Appellants argue the Ordinance constitutes discriminatory treatment in violation of the Act, which provides: "No state or political subdivision thereof shall impose any of the following taxes during the period beginning November 1, 2003 and ending November 1, 2014: (1) taxes on internet access. (2) multiple discriminatory taxes on electronic commerce." ITFA § 1101(a), 47 U.S.C.A. § 151 (2007). First, the tax at issue here is not a tax on internet access. The tax is a fee a business must pay for providing games of chance through the use of a gaming terminal. In this case, the gaming terminals happen to be computers that provide access to the internet. Not once does the Ordinance describing the tax even mention internet access; it is just happenstance that Appellants' gaming terminals providing games of chance also provide access to the internet. Other cyber-gambling establishments are subject to the privilege license tax even if their gaming terminals do not provide access to the internet. Thus, the privilege license tax is not a tax on internet access. Next, the Ordinance does not impose multiple discriminatory taxes on electronic commerce. Appellants claim the Ordinance "taxes only internet-based sweepstakes, not similar sweepstakes offered by traditional means." This

contention is false. The Ordinance never mentions "internet-based" sweepstakes or makes a distinction regarding electronic commerce; it only imposes the tax for cyber-gambling establishments that use a computer or gaming terminal in provision of games of chance. Thus, we hold the privilege license tax enacted by the Ordinance does not violate the ITFA.

## IV. Conclusion

For the foregoing reasons, we hold the trial court did not err in granting summary judgment for the City. Therefore, the judgments of the trial court are

Affirmed.

Judge GEER concurs.

Judge HUNTER, Robert C., dissents in a separate opinion.

HUNTER, Robert C., Judge, dissenting.

The majority dismisses appellants' claims that the license tax imposed by the City of Lumberton (the "City") pursuant to Lumberton City Code section 12-60.1 (the "Ordinance") is invalid as it is an unjust and inequitable taxation scheme. I conclude these claims should survive summary judgment and I must respectfully dissent.

As the majority notes, to be "just and equitable," as required by Art. V, § 2(1) of our state constitution, a license tax must not be "so high as to amount to a prohibition of the particular business." *State v. Razook*, 179 N.C. 708, 710, 103 S.E. 67, 68 (1920). The *Razook* Court recognized that while a municipality may have the legislative authority to levy a license tax on a class of business, it may not do so for the purpose of prohibiting the business altogether. 179 N.C. at 711, 103 S.E. at 68. Consequently, our courts may "declare a municipal ordinance levying a license tax on business invalid on the ground that the tax imposed is so oppressive and unreasonable as to amount to confiscation, rather than taxation." *Id.* at 711, 103 S.E. at 69 (citation and quotation marks omitted). The defendant in *Razook* alleged that a municipal ordinance imposing a license tax on his business was unreasonable and excessive, and thus invalid. *Id.* In rejecting his argument, our Supreme Court noted that defendant provided no evidence *at trial* that the tax was intended to prohibit his business. *Id.*

Unlike *Razook*, the present case is not an appeal from the entry of judgment following a trial. We review the trial courts' entry of sum-

mary judgment. The parties' motions for summary judgment required they produce only a "preview" or "forecast" of their evidence. *Loy v. Lorm Corp.*, 52 N.C. App. 428, 437, 278 S.E.2d 897, 903-04 (1981) (citation and quotation marks omitted). Appellants submitted verified pleadings that the trial courts could treat as affidavits in support of their motions for summary judgment. *Wein II, LLC v. Porter*, 198 N.C. App. 472, 477, 683 S.E.2d 707, 711 (2009). When "different material conclusions can be drawn from the evidence, summary judgment should be denied." *Spector United Emp. Credit Union v. Smith*, 45 N.C. App. 432, 437, 263 S.E.2d 319, 322 (1980).

Here, the license tax imposed by the City upon appellants for fiscal year 2009-2010 was $12.50 per business. For fiscal year 2010-2011, the Ordinance taxes appellants in the amount of $5,000.00 per business location and $2,500.00 per gaming or computer terminal. Appellants' verified pleadings stated that the resulting license taxes levied for 2010-2011 were $75,000.00 against appellant G&M, $105,000.00 against appellant Storie, $110,000.00 against appellant E.Z., and $137,525.00 against appellant IMT. Thus, the Ordinance imposes a license tax that is between 6,000 and 11,000 times higher than the tax imposed on appellants in the previous year. This is in stark contrast to the modest annual license tax imposed on any other business, such as: campgrounds and trailer parks, $12.50; bicycle dealers, $25.00; restaurants, $0.50 per customer seat with a minimum tax of $25.00; pinball machines or "similar amusements," $25.00; bowling alleys, $10.00 per alley; movie theaters, $200.00 per room.

Granted, " 'the mere amount of the tax does not prove its invalidity.' " *Razook*, 179 N.C. at 711, 103 S.E. at 69 (citation omitted). However, the discrepancy between the tax imposed by the Ordinance upon Cyber Gambling establishments and all other businesses, while not conclusive evidence of the inequity of the tax, makes summary judgment improper.

Pursuant to our standard of review of the trial courts' summary judgment orders, I conclude appellants' evidence of the grossly dissimilar tax rates creates a genuine issue of material fact as to whether the license tax is unjust and inequitable. Accordingly, I would reverse the trial courts' orders and remand for trial.